# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JEFFREY LYNN SCOTT,

    Plaintiff,

v.

JACOB CLUNE, ET AL.,

    Defendants.

Case No. 17-CV-3024-JAR

## MEMORANDUM AND ORDER

Plaintiff Jeffrey Lynn Scott, an inmate at Hutchinson Correctional Facility ("HCF"), proceeding *pro se*, brings this civil rights action alleging he was subjected to excessive force when two corrections officers, Jacob Clune and Brian Gahagan ("Defendants"), handcuffed him and wrenched his arms up after another inmate had attacked him. Before the Court is Defendants' Motion for Summary Judgment (Doc. 27), alleging, *inter alia*, Defendants are entitled to qualified immunity and Eleventh Amendment immunity. The motion is fully briefed and the Court is prepared to rule. For the reasons explained below, the Court grants summary judgment in Defendants' favor.

## I. Legal Standards
### A. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1] In applying this standard, courts view the evidence and all reasonable inferences therefrom in the

---

[1] Fed. R. Civ. P. 56(a).

1

light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

[6] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

[9] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[10] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11]

Where, as here, the plaintiff proceeds *pro se*, the court must construe the plaintiff's filing liberally and afford the plaintiff's filing some leniency.[12] Additionally, "[c]ourts must take added precautions before ruling on a motion for summary judgment when a *pro se* litigant is involved . . . especially when enforcing these [technical] requirements might result in the loss of the opportunity to prosecute or defend a lawsuit on the merits."[13] At the same time, it is not the proper function of a district court to assume the role of advocate for a *pro se* litigant, and *pro se* parties are expected to follow the Federal Rules of Civil Procedure, as all litigants must.[14]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[15]

**B. Qualified Immunity**

Qualified immunity protects public officials performing discretionary functions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable

---

[10] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11] *Adams*, 233 F.3d at 1246.

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)); *Azim v. Tortoise Capital Advisors, LLC*, No. 13-2267-DDC-JPO, 2016 WL 3405126, at *5 (D. Kan. June 21, 2016).

[13] *Wilson v. Skiles*, No. 02-3190-JAR, 2005 WL 466207, at *1 (D. Kan. Feb. 4, 2005) (citing *Hass v. U.S. Air Force*, 848 F. Supp. 926, 929 (D. Kan. 1994)).

[14] *Hall*, 935 F.2d at 1110; *McDaniels v. McKinna*, 96 F. App'x 675, 578 (10th Cir. 2004).

[15] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

person would have known."[16] Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law."[17]

"[B]ecause qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the qualified immunity defense triggers a modified summary judgment standard.[18] The initial burden rests on the plaintiff, rather than the defendant; and the plaintiff must first "clear two hurdles:" (1) demonstrate that the defendant violated his constitutional or statutory rights; and (2) demonstrate that the right was clearly established at the time of the alleged unlawful activity.[19] Only if the plaintiff clears both hurdles does the burden shift back to the movant defendant to make the traditional showing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.[20]

In determining whether the plaintiff has demonstrated a violation of his constitutional or statutory rights and that the right was clearly established at the time, courts must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.[21] In *Scott v. Harris*,[22] the Supreme Court held that "[T]his usually means adopting . . . the plaintiff's version of the facts," unless that version "is so utterly discredited by the record that no reasonable jury could have believed him."[23] In *Scott*, the plaintiff's version of the facts was

---

[16] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[17] *Malley v. Briggs*, 475 U.S. 335, 341 & 343 (1986).

[18] *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013).

[19] *Id.*; *see also Gutierrez v. Cobos*, 841 F.3d 895, 900–01 (10th Cir. 2016).

[20] *Rojas*, 727 F.3d at 1003–04.

[21] *Rojas*, 727 F.3d at 1004 n.5.

[22] 550 U.S. 372 (2007).

[23] *Id.* at 378, 380; *see also Blackwell v. Strain*, 496 F. App'x 836 (10th Cir. 2012).

discredited by a videotape that completely contradicted plaintiff. Thus, although the court should generally accept the non-movant plaintiff's version of the facts and draw reasonable inferences in the light most favorable to the plaintiff, the Court need not accept alleged facts that are contradicted or discredited by the record. Moreover, citing to the *Scott* decision, the Tenth Circuit has held that "because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record."[24] In that sense, the court does not discard the Rule 56 process, but relies upon facts supported by the record, while viewing those facts, and reasonable inferences therefrom, in the light most favorable to plaintiff.

## II. Uncontroverted Facts

Plaintiff was at all relevant times incarcerated at the HCF in Hutchinson, Kansas. Officers Clune and Gahagan were at all relevant times employed as Corrections Officers at HCF.

On October 21, 2016 at approximately noon, inmate Damon Reed attacked Plaintiff in the dining room at HCF. Reed swung and punched Plaintiff's right shoulder, causing Plaintiff to fall onto his back. Corrections Officer Andrew Harris was within arm's reach of Reed when this occurred. Officer Harris immediately grabbed Reed's arm as Reed attempted to stomp Plaintiff while he was on his back. Plaintiff bicycle-kicked to stave off Reed's stomping.

As Officer Harris pulled Reed away from Plaintiff, Plaintiff got up from the floor and took a boxer's stance. While Officer Harris restrained Reed, Officer Gahagan rushed over and herded Plaintiff against a wall. Officer Clune then assisted Officer Gahagan with pushing Plaintiff to the ground. Four officers worked to handcuff Plaintiff. After they handcuffed

---

[24] *Thomson v. Salt Lake City*, 584 F.3d 1304, 1312 (10th Cir. 2009) (internal quotations and citations omitted).

5

Plaintiff and pulled him to a standing position, Officers Gahagan and Clune escorted Plaintiff out of the dining room to the segregation unit.

## III.    Analysis

Plaintiff asserts two counts of excessive force: one under the Fourth Amendment and the other under the Eighth Amendment.[25] He claims that Officers Clune and Gahagan intentionally pulled his shoulders and arms, causing severe physical pain to his handcuffed wrists, while escorting him out of the dining room. He also claims that once he was brought to segregation, Officer Clune pushed him face first into the wall and shouted at him to remove his boots. Plaintiff argues these acts were "wanton excessive force and completely unnecessary use of force against an injured [60-year-old] man who was non-combative during the time the force was used," constituting "cruel and unusual punishment of a defenseless person."[26]

An allegation of excessive force by a prisoner should be analyzed under Eighth Amendment jurisprudence, not Fourth Amendment jurisprudence.[27] In *Sampley v. Ruettgers*,[28] the Tenth Circuit instructed:

> A prison guard's use of force against an inmate is "cruel and unusual" only if it involves "the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). We think that this standard imposes three requirements for an inmate to state a cause of action under the eighth amendment and section 1983 for an attack by a prison guard. First, "wanton" requires that the guard have intended to harm the inmate. Second, "unnecessary" requires the force used to have been more than appeared reasonably necessary at the time of the use of force to maintain or restore discipline. Third, "pain" means more than momentary

---

[25] Doc. 1 at 3.

[26] Doc. 1 at 5.

[27] *Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (explaining that excessive force claims involving convicted prisoners arise under the Eighth Amendment; Fourth Amendment excessive force claims apply to facts leading up to and including arrest; Fifth or Fourteenth Amendment excessive force claims address instances that fall "somewhere between the two stools of an initial seizure and post-conviction punishment.").

[28] 704 F.2d 491 (10th Cir. 1983).

6

discomfort; the attack must have resulted in either severe pain or a lasting injury.[29]

The test for excessive force is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."[30] The Court balances the need for force with the force used.[31] Whether a prisoner suffered injury and the extent of any injury are relevant inquiries when determining whether an Eighth Amendment violation occurred.[32] A push or shove with no discernible injury, for example, may not constitute excessive force.[33] The constitutional question for the Court is whether a defendant engaged in unnecessary and wanton infliction of pain.[34] If a defendant caused a prisoner to suffer unnecessary and wanton infliction of pain, the prisoner need not allege significant physical injuries.[35] But if the use of force was both de minimis and "not of a sort repugnant to the conscience of mankind," an excessive force claim will not succeed.[36]

In this case, pursuant to the Court's instruction,[37] the Kansas Department of Corrections has filed a *Martinez* Report.[38] The *Martinez* Report is an administrative record, assembled by

---

[29] *Id.* at 494–96.

[30] *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (citation and internal quotation marks omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

[31] *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir. 1996).

[32] *Wilkins*, 559 U.S. at 37 (citing *Hudson*, 503 U.S. at 7).

[33] *Hudson*, 503 U.S. at 9-10.

[34] *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001).

[35] *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992).

[36] *Hudson*, 503 U.S. at 10; *Marshall v. Milyard*, 415 F. App'x. 850, 853–54 (10th Cir. 2011) (affirming dismissal of excessive force claim where the inmate alleged that a guard grabbed him and dug his fingernails into his arm, resulting in an injury); *Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005) (affirming summary judgment where sheriff's deputies allegedly grabbed the inmate around the neck and twisted it).

[37] Doc. 6.

[38] Doc. 21.

7

the prison, that documents the factual investigation of a prisoner's claim.[39] The *Martinez* Report includes video footage of the dining room incident from various angles.

In his response to the summary judgment motion, Plaintiff says "[t]he video clearly shows evidence of excessive force as [he] is bent over by the actions of defendant officers even when [he] was not struggling against them."[40] He claims disputes of material facts exist as to wantonness and necessity based on his testimony, Christopher Franco's testimony (an inmate who witnessed the incident), and the video.[41] The Court disagrees.

As noted earlier, the Court does not accept factual allegations that are utterly discredited by the record such that no reasonable jury could believe them. Here, both Plaintiff and Franco's testimony are incredible given the video footage. Cameras 9, 15, and 16 establish as an uncontroverted fact that Plaintiff resisted officers' attempt to get him on the floor, lie flat on the floor, put his hands behind his back, handcuff him, and walk as directed.

At time stamp 11:59:25, Officer Gahagan pushed Plaintiff against the wall.[42] At 11:59:26, Plaintiff pushed Officer Gahagan back and they struggled.[43] At 11:59:28, Officer Clune assisted Officer Gahagan push Plaintiff to the floor.[44]

---

[39] The Tenth Circuit endorsed the use of *Martinez* Reports in *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). The Court considers the *Martinez* Report as part of the summary judgment record and treats the report like it would an affidavit.

[40] Doc. 30 at 5.

[41] *Id*. Franco stated, in pertinent part, "I saw Officers [Clune and Gahagan] use excessive force against offender Scott as they pulled up on his handcuffs causing him to cry out in pain. The force used was not necessary as offender Scot[t] was not resisting the officers as they escorted him from the room. Both of these officers continued to apply unnecessary force to offender Scott's shoulders and wrists and lifted [him] up on his restraints [] for the entire time they escorted him." Doc. 21-2.

[42] Doc. 21, Exhibit 14, Camera 15 at 11:59:25.

[43] *Id*. at 11:59:26.

[44] *Id*. at 11:59:28.

At 11:59:30, Plaintiff can be seen resisting attempts to handcuff him by keeping his knees folded and his arms and hands under him.[45] Three other officers had to assist Officers Gahagan and Clune once Plaintiff was on the ground. One officer had to pull Plaintiff's legs, extend them, cross them, and then sit on them to prevent Plaintiff from shifting position to hide his hands. Once the officers pulled Plaintiff's right arm on his back, they struggled a couple of seconds to get Plaintiff's left arm out from underneath him. After they handcuffed Plaintiff, they pulled him up and left him kneeling as they picked up items from the floor and adjusted their equipment. They then pulled Plaintiff to his feet and began walking him away at 12:01:38.[46] At 12:01:40, Plaintiff resisted moving forward and Officers Clune and Gahagan bended Plaintiff's head downward to force him to walk forward.[47]

Given the videos, the Court finds no reasonable jury would believe Plaintiff's or Franco's testimony that Plaintiff did not resist the officers' attempt to handcuff and escort him from the dining room. Plaintiff is six-foot tall and approximately 200 pounds.[48] It took five officers to handcuff him. Under the circumstances, Defendants' use of force was objectively reasonable to overcome Plaintiff's resistance to being handcuffed and walked out of the dining hall. Moreover, Plaintiff's medical records reflect no injury to his wrists. Plaintiff complained of severe pain in his right shoulder and right upper leg approximately eight days later, but the assessment indicated he hyperextended his shoulder without hesitation or grimacing.[49] The

---

[45] Doc. 21, Exhibit 14, Camera 16 at 12:01:30.

[46] *Id*. at 12:01:38.

[47] *Id*. at 12:01:40.

[48] Doc. 21-1.

[49] Doc. 18-1 at 40.

Court concludes that Plaintiff has failed to show Defendants violated his constitutional right and used excessive force in the dining room.

Plaintiff's excessive force claim based on Officer Clune allegedly shoving him face forward into the segregation room likewise fails. "Not every push or shove . . . violates a prisoner's constitutional rights."[50] "An inmate who complains of a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim."[51] Plaintiff alleged his right leg was injured during the altercation and he had to use a walker for one week afterwards to move from his cell to the shower. While Plaintiff alleges use of force and injury, the Court finds the alleged force de minimis and not repugnant to mankind. Moreover, Plaintiff's medical record reflects no injury to his right leg and the use of the walker was temporary.

## IV.  Conclusion

In sum, Plaintiff fails to show a violation of his Eighth Amendment rights.[52] This renders discussion on the second prong of qualified immunity unnecessary.[53] Qualified immunity thus

---

[50] *Marshall v. Milyard*, 415 F. App'x. 850, 852-53 (10th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)) (internal quotation marks omitted).

[51] *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 9 (internal quotation marks omitted).

[52] *Marshall v. Wiebe*, No. 16-3014-EFM-KGS, 2018 WL 1806760, at *7 (D. Kan. Apr. 17, 2018) (granting summary judgment to Defendant on Plaintiff's excessive force claim because allegations that Defendant slammed Plaintiff against the cell wall and squeezed his injured elbow was insufficient to show that Defendant violated his Eighth Amendment rights); *Rhoten v. Werholtz*, 243 F. App'x. 364, 367 (10th Cir. 2007) (determining that allegations that the prison official slammed the inmate against the wall, squeezed his nipples and buttocks, and pulled on his testicles firmly, causing great pain, constituted de minimis force and were insufficient to state an excessive force claim); *Marshall v. Milyard*, 415 F. App'x. 850, 953 (10th Cir. 2011) (finding prison guard's actions of grabbing the inmate's arm and digging his fingernails into it with enough force to injure the inmate were de minimis).

[53] *See Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) ("If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity.").

protects Defendants from Plaintiff's excessive force claims.  This conclusion renders Defendants' remaining arguments for summary judgment moot.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED**.

**IT IS SO ORDERED.**


Dated: July 2, 2018

      S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE